# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CRAIG RICHBURG,

    *Plaintiff*,

    v.

HOUSE OF RUTH OF MARYLAND, *et al.*,

    *Defendants*.

Case No. 25-cv-195-ABA

## MEMORANDUM OPINION

Plaintiff Craig Richburg alleges that between February 2020, when he met his now ex-wife, Defendant Kalkidan Kifle, and approximately September 2023, various domestic incidents occurred between him and Kifle that resulted in police and court intervention. He claims that Defendant Kifle fabricated the claims against him. Plaintiff initially filed this case in the Circuit Court for Anne Arundel County, Maryland, against various defendants for claims arising out of an alleged conspiracy to defame and incarcerate him. One of the defendants removed the case to this Court. This Court dismissed the claims against Anne Arundel County, Maryland and Anne Arundel Police Department with prejudice and dismissed claims against Sgt. Jennifer Spieth and Cpl. C.J. Eslick in June 2025 without prejudice.

Defendants Luann Edwards, Deena Hausner and House of Ruth of Maryland (the "House of Ruth Defendants") and Heartly House also filed motions to dismiss the amended complaint. Plaintiff filed a motion for leave to file a second amended complaint, which is opposed by Defendants Sgt. Spieth, Cpl. Eslick, the House of Ruth Defendants, and Heartly House. Defendant Kifle has not participated in this case in the two years it has been pending; therefore, Plaintiff filed a motion for default judgment

against her. For the reasons that follow, the House of Ruth Defendants' and Heartly House's motions to dismiss will be granted, Plaintiff's motion for leave to file a second amended complaint will be denied, and Plaintiff's motion for default judgment as to Defendant Kifle will be granted in part and denied in part.

## I.   BACKGROUND[1]

### A.   Factual background

Plaintiff Richburg first connected with Defendant Kifle over the phone and online on February 24, 2020, and they first met in person on March 9, 2020. ECF No. 3 ¶¶ 15, 16. When Richburg first met her, Kifle allegedly told him that her name "was Beza Gerbremaraium (phonetically)." ECF No. 3 ¶ 21. He alleges that when she later asked him to send her $500 for a new lease and he asked her how to spell her name, she said her name was Kalkidan Kifle. *Id*. ¶¶ 21, 22. Richburg alleges other examples of Kifle making false statements. *Id*. ¶¶ 24–28.

In April 2020, Kifle informed Richburg that she was pregnant, and they married on October 2, 2020. *Id*. ¶¶ 17, 19. Richburg alleges that, between March and approximately June 2020, there were at least three incidents in which Kifle either threatened to harm herself or did in fact cut herself. *Id*. ¶¶ 31–39. On November 13, 2020, a dispute between the two ensued during which Kifle cut her wrists. *Id*. ¶ 40. Richburg also alleges that during the dispute Kifle attempted to ingest Richburg's medication but was stopped; then, "Kifle also injured Richburg." *Id*. ¶¶ 40–41. Richburg called 911, and Kifle was transported to Baltimore Washington Medical Center

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

("BWMC"). *Id.* ¶¶ 42–43. Richburg contends that the records from this visit show that Kifle told the BWMC staff that she had cut herself out of anger and denied any physical altercation and any history of self-harm or mental illness. *Id.* ¶ 43. BWMC personnel allegedly also spoke to Kifle's father, who reported that Kifle had a history of cutting herself when she was angry. *Id.* ¶ 44. On January 19, 2021, Kifle allegedly reported to her doctor that she felt safe at home. *Id.* ¶ 45.

In early 2021, Kifle and Richburg's daughter was born. *Id.* ¶ 46. Richburg alleges that he tried to help Kifle make several appointments for mental health evaluations and treatments but that Kifle refused to go and would cancel or reschedule any appointments. *Id.* ¶ 47. On March 1, 2021, Kifle was evaluated at Family Intervention Partners and the report allegedly indicated that Kifle had suicidal ideations and was "unable to control herself when angry[,] is easily frustrated[, and] experiences wandering thoughts and is confused." *Id.* ¶¶ 50–51. The evaluation diagnosis allegedly stated that Kifle had an unspecified adjustment disorder. *Id.* ¶ 54.

Richburg contends that, on March 28, 2021, Kifle again attempted to take medication while threatening to kill herself, but Richburg and Kifle's father were able to stop her. *Id.* ¶ 55. Kifle then allegedly hit Richburg; so, he called the Anne Arundel Police Crisis Intervention Unit. *Id.* ¶¶ 56–57. On March 29, 2021, Richburg filed a petition for protective order against Kifle based on Kifle's suicide attempt and attempt to harm Richburg and their daughter. *Id.* ¶ 59. A temporary protective order was issued until April 5, 2021, when a hearing would be held on the petition. *Id.* ¶ 60.

On March 30, 2021, Anne Arundel police took Kifle to a court-ordered mental health evaluation. *Id.* ¶ 65. During the evaluation, one of the officers allegedly told one of the nurses that Richburg's protective order petition was "not completely factual" and

that they were concerned about Kifle's situation. *Id.* ¶ 67. Kifle allegedly agreed that the petition was not "completely factual" and denied that she had any suicidal thoughts. *Id.* ¶ 68. Kifle then filed a petition for protective order against Richburg, alleging that on March 17, 2021, Richburg pushed her to the ground in the basement and placed his hands over her nose and mouth so she could not scream or breathe. *Id.* ¶¶ 69, 76–77. Richburg contends that a statement of charges was filed against him for that March 17, 2021 incident and that he "was arrested and spent time in jail." *Id.* ¶¶ 69, 75. Richburg contends that this was the first he had heard such an allegation and that it was false and made based on the prompting, coaching, and influence of the police, specifically Cpl. Eslick. *Id.* ¶¶ 70–73, 79.

Richburg contends that a separate statement of charges, for second degree assault, was filed "on or about March 31, 2021 . . . stemming from an incident on or about 2/21/21." *Id.* ¶ 81. That statement of charges was filed by "Police officer Detective Owens" and "Off. Hubbard." *Id.* ¶¶ 81, 86. Richburg contends that these allegations were also false and were the result of prompting, coaching, and influence of the police. *Id.* ¶¶ 82–85. "Upon information and belief, based in part upon discussions Richburg had with Kifle, the false allegations of rape and abuse were at least in part generated by employees and agents of Heartly house [*sic*], a non-profit shelter." *Id.* ¶ 104.[2]

---

[2] In the amended complaint, Plaintiff does not specify when this alleged influence by Heartly House occurred; however, in his proposed second amended complaint, Plaintiff specifies that these discussions were the basis of the charges filed on March 31, 2021. *See* ECF No. 57-1 ¶ 25. Therefore, any alleged generation or prompting of the rape allegation would have occurred on or before March 31, 2021.

On April 5, 2021, a judge held a hearing on both protective order petitions (based on the incidents on March 17 and 28, 2021, respectively) and found by a preponderance of the evidence that Kifle had assaulted Richburg and entered a final protective order for Richburg against Kifle through July 5, 2021. *Id.* ¶ 61. The judge also granted Kifle a final protective order against Richburg. *Id.* ¶ 88.

Richburg contends that at some unspecified time(s), "[t]he police crisis intervention team hid Kifle," *id.* ¶ 62, and Kifle began alleging that Richburg had raped her—allegations he says she had not mentioned in any medical reports, *id.* ¶¶ 89–90.

On April 26, 2021, Kifle sent a text message: "I don't care how much we argue, he's mine until I kill him. Then he's Jesus's problem." *Id.* ¶¶ 91-92. An arrest warrant was then issued for Kifle for violation of the protective order, and Richburg filed a petition for custody of their daughter. *Id.* ¶¶ 91, 93–94. A judge ordered that Kifle undergo another mental health evaluation. *Id.* ¶ 95. Richburg told the judge that the police had previously interfered with Kifle's evaluation on March 30, 2021; so, the judge ordered that all mental health records be attached to the order for evaluation. *Id.* ¶ 96. Sgt. Spieth allegedly removed the records from the order and again spoke to the evaluating medical professional indicating that Kifle was not mentally unwell and that Richburg was abusive. *Id.* ¶ 98. Cpl. Eslick allegedly went to the state's attorney's office and told them that Richburg was "attempting to use the new charges to take custody of his child." *Id.* ¶ 100.

"Several weeks later, Richburg and Kifle reconciled" and sought dissolution of their respective protective orders. *Id.* ¶¶ 101–102. Kifle allegedly admitted to Richburg that the allegations in her protective order petition were not true. *Id.* ¶ 103.

5

On July 28, 2022, Richburg and Kifle were in a car together with their daughter in Ohio when Kifle allegedly "became dangerously abusive to Richburg while he was operating the vehicle." *Id*. ¶¶ 105–106. Richburg contacted the local police. *Id*. ¶ 107.

In the summer of 2022, Defendants Hausner and Edwards, employees of House of Ruth of Maryland, began providing Kifle with legal representation. *Id*. ¶ 110. Richburg alleges that the House of Ruth Defendants "illegally and improperly shared a copy of a confidential, sealed[] evaluation that had been related to a completely unrelated matter involving Richburg." *Id*. ¶ 111. The complaint does not identify with whom the House of Ruth Defendants allegedly "shared" the evaluation, but the complaint states, "The Court in a contempt hearing concurred that the evaluation had been obtained illegally." *Id*. ¶ 112. On January 23, 2023, Kifle, in a sworn deposition, admitted to having fabricated the rape allegation against Richburg. *Id*. ¶ 113. In September 2023, Kifle allegedly admitted in court that Richburg had not committed any acts of abuse during their marriage. *Id*. ¶ 114. Plaintiff contends that, as a result of the false allegations and his arrest, he suffered damages from lost contracts with insurance companies worth millions for his business. *Id*. ¶ 115.

## B.    Procedural History

Plaintiff initially filed this case in the Circuit Court for Anne Arundel County, Maryland, on April 2, 2024 against Defendants Kifle, Anne Arundel County, Anne Arundel County Police Department, Sgt. Spieth, Cpl. Eslick, the House of Ruth Defendants, and Heartly House. ECF No. 2. Plaintiff filed an amended complaint on October 26, 2024. ECF No. 3. One of the defendants removed the case to this Court on January 21, 2025. ECF No. 1.

On October 29, 2024, Defendant Kifle was served with a writ of summons requiring her to respond within 30 days. ECF No. 18-2 at 2. On December 18, 2024, she was served with the writ of summons as well as the amended complaint requiring her to respond within 30 days. *Id.* at 1. Kifle has not filed any response to the case in the Circuit Court for Anne Arundel County or before this Court; therefore, on March 6, 2025, Plaintiff filed a motion for entry of default. ECF No. 18. The Clerk entered default on March 12, 2025 and sent Kifle a Notice of Default giving her 28 days to file a motion to vacate default. ECF Nos. 27 & 28. Kifle has not filed any motion or response or any other filing in this Court. On April 15, 2025, Plaintiff filed a motion for default judgment as to Kifle. ECF No. 41.

On June 17, 2025, the Court dismissed the claims against Anne Arundel County, Maryland and Anne Arundel Police Department with prejudice given that Anne Arundel Police Department is not an legal body capable of being sued and for failure to file a notice of intent to sue prior to the deadline as required under the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 through 5-304. *Richburg v. Anne Arundel Cnty., Md.*, Case No. 25-cv-195-ABA, 2025 WL 1697465, at *2 (D. Md. June 17, 2025). The Court also dismissed the claims against Sgt. Spieth and Cpl. Eslick (the "Officer Defendants") without prejudice based on a failure to properly serve and failure to allege facts sufficient to overcome the officers' qualified immunity. *Id.* The Court noted that Plaintiff's claim based on allegedly seeking "false" criminal charges against him was insufficient as he was arrested pursuant to a warrant and Plaintiff had not plausibly alleged facts that would permit the Court to conclude that the warrant lacked probable cause. *Id.* (citing *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998)). Further, to the extent Richburg argued in his opposition brief to the Officer Defendants'

motion to dismiss that the officers had "racial or gender animus against plaintiff," the Court noted that Plaintiff had not alleged such animus in his complaint. *Id.* Finally, the Court stated that "[i]f Plaintiff wishes to move forward with claims against Defendants Heartley [*sic*] House, House of Ruth of Maryland, Deena Hausner, [and] Luann Edwards, he must file proposed summonses, properly serve them upon issuance of summonses by the Clerk, and file new Return of Service forms." *Id.* at *3.

On July 15, 2025, Plaintiff filed a motion requesting that summonses be issued for Sgt. Spieth and Cpl. Eslick. ECF No. 53. The Court denied the motion noting that the claims against Sgt. Spieth and Cpl. Eslick had been dismissed and that "If Plaintiff wishes to amend his complaint to re-assert claims against Sgt. Jennifer Spieth and Cpl. C.J. Eslick, Plaintiff must file a motion for leave to file an amended complaint pursuant to Local Rule 103.6." ECF No. 56. On August 1, 2025, Plaintiff filed a motion for leave to file a second amended complaint. ECF No. 57. Sgt. Spieth and Cpl. Eslick filed a response in opposition to the motion. ECF No. 61. The House of Ruth Defendants filed a separate response in opposition to the motion, ECF No. 63, for which Heartly House adopted the legal arguments and analysis, ECF No. 82. Plaintiff filed replies to each. ECF Nos. 62, 65, & 88. At the same time as filing their response to Plaintiff's motion, the House of Ruth Defendants filed a motion to dismiss the amended complaint, ECF No. 63, for which Heartly House adopted the legal arguments and analysis, ECF No. 81. Plaintiff opposes those motions. ECF Nos. 75 & 83.

### C.    Claims

In the amended complaint, Richburg alleges ten claims. He alleges negligence (Count 1), negligent hiring, retention, or supervision (Count 3), intentional infliction of emotional distress ("IIED") (Count 4), civil conspiracy (Count 6), defamation: libel

(Count 7), defamation: slander (Count 8), and malicious prosecution (Count 9) against all Defendants. ECF No. 3 at 12–23. He alleges violations of 42 U.S.C. § 1983 (Count 2) against Anne Arundel County, Anne Arundel County Police, Sgt. Spieth, Cpl. Eslick, House of Ruth of Maryland, and Heartly House only. *Id.* at 13. He alleges assault (Count 5) against Kifle only. *Id.* at 18. Finally, he alleges violation of the Health Insurance Portability and Accountability Act ("HIPAA") (Count 10) against Heartly House, House of Ruth of Maryland, Hausner, and Edwards only. *Id.* at 23.

In the proposed second amended complaint, Richburg alleges eleven claims. He alleges negligence (Count 1), negligent hiring, retention, or supervision (Count 3), IIED (Count 4), civil conspiracy (Count 6), defamation: libel (Count 7), defamation: slander (Count 8), and malicious prosecution (Count 9) against Defendants Kifle, the House of Ruth Defendants, and Heartly House. ECF No. 57-1 at 11–24. He alleges violations of 42 U.S.C. § 1983 (Count 2) against Defendants Sgt. Spieth and Cpl. Eslick only. *Id.* at 12. He alleges assault and battery (combined under Count 5) against Kifle only. *Id.* at 20. Finally, he alleges violations of HIPAA (Count 10) and the Computer Fraud and Abuse Act ("CFAA") and corresponding Maryland law (Count 11) against Defendants Heartly House and the House of Ruth Defendants. *Id.* at 25–26.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court "must accept as true all of the factual

allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

### B.    Motion for Leave to Amend

A party may request, and the court should freely give, leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, "courts should 'liberally allow amendment,' and deny such leave only in cases of 'prejudice, bad faith, or futility.'" *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)) (internal citations omitted). "[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *Id.* (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

## III.  DISCUSSION

### A.  Negligence and Negligent Hiring, Retention, or Supervision (Counts 1 and 3)

Under Maryland law, "[a] valid negligence claim . . . must allege: (1) that the defendant had a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the defendant's breach of duty proximately caused the loss or injury." *Pendleton v. State*, 398 Md. 447, 460 (2007) (citing cases). The same elements apply for a claim of negligent hiring, retention, and supervision. *See Jones v. State*, 425 Md. 1, 18 (2012) (citing *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 180 (2004)).

"[T]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another." *Pendleton*, 398 Md. at 460 (quoting *W. Va. Cent. & Pittsburgh Ry. Co. v. State*, 96 Md. 652, 666 (1903)). "Whether a duty exists depends upon whether one party is entitled to the protection of, or is under an obligation to, the other party." *Id.* at 461 (citing *Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 415 (2005)). A defendant only owes a duty to "foreseeable plaintiffs." *Furr v. Spring Grove State Hosp.*, 53 Md. App. 474, 482 (1983). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent." *Iglesias v. Pentagon Title & Escrow, LLC*, 206 Md. App. 624, 638 (2012) (quoting *Jacques v. First Nat'l Bank*, 307 Md. 527, 534–35 (1986)). The statute of limitations for a negligence claim is three years. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

The House of Ruth Defendants, and Heartly House by adoption, argue that Richburg has failed to allege with "certainty and definiteness" facts and circumstances sufficient to set forth any duty that they owed to Richburg. ECF No. 63-1 at 9, 12. They contend that there are no facts in the amended complaint to show that there was any intimate nexus or contractual relationship between them and Richburg or to establish any foreseeability of harm to Richburg. *Id.* at 9–10. They contend that the complaint merely states a conclusory allegation that Defendants owed Richburg a duty of ordinary care. *Id.* at 9. The House of Ruth Defendants further argue that, even if they did owe him a duty, Richburg failed to articulate any facts of how House of Ruth of Maryland failed to use reasonable care when hiring, retaining, and/or supervising Defendants Hausner and Edwards or any alleged breach that caused his injuries. *Id.* at 12.

Plaintiff contends that a duty arose, not from a formal relationship, but rather from the foreseeable risk of harm created by Defendants' allegedly illegal actions. ECF No. 75 at 4. He contends that the House of Ruth Defendants acted in concert with others to defame and maliciously prosecute him and violate his civil rights and that their participation in this scheme created a foreseeable risk of harm to his reputation, liberty, and livelihood. *Id.* He further contends that House of Ruth of Maryland had a duty to supervise Defendants Hausner and Edwards and knew or should have known that they were capable of inflicting harm. *Id.* As to Heartly House, Plaintiff contends that "[s]ince the complaint directly alleges that employees and agents of Heartly House generated false allegations, the Plaintiff has established the basis for the underlying tortious conduct necessary for these vicarious claims. Heartly House owed a duty of care, and its agents' acts (generating false claims and conspiring) breached that duty and proximately caused the damages." ECF No. 83 at 4.

The amended complaint alleges that the House of Ruth Defendants began representing Defendant Kifle in Summer 2022 and that they allegedly illegally obtained a confidential evaluation in alleged violation of HIPAA. ECF No. 3 ¶¶ 110–112. Nothing in these three paragraphs establishes that the House of Ruth Defendants had any intimate nexus relationship with Richburg or establishes how Richburg was a foreseeable plaintiff such that any duty arose for the House of Ruth Defendants. Even if any duty existed, the complaint is devoid of any facts to show a breach of that duty, particularly in terms of the hiring, retention, or supervision of Defendants Hausner and Edwards. Therefore, the House of Ruth Defendants' motion to dismiss Counts 1 and 3 of the amended to complaint will be granted.

Similarly, as to Count 3, the amended complaint lacks any facts regarding a duty or breach by Heartly House and, in fact, does not mention any specific employees alleged to have been negligently hired, retained, or supervised by Heartly House. Therefore, Heartly House's motion to dismiss Count 3 of the amended complaint will be granted.

As to Count 1, the amended complaint does allege that Heartly House generated false rape and abuse allegations against Richburg, which he contends would make him a foreseeable plaintiff with a sufficiently intimate nexus that a duty of ordinary care would be established and possibly breached. *Id.* ¶ 104. But even if the complaint adequately alleged that Heartly House owed him a duty that could give rise to a negligence claim (which the Court need not and does not decide), Richburg has confirmed *when* this alleged false allegation was generated: prior to March 31, 2021. ECF No. 57-1 ¶¶ 23, 25 (the proposed second amended complaint stating that Blaine Hoffmann, a former employee of Heartly House, had generated these false allegations to prompt the March

31, 2021 charges).[3] Under the statute of limitations, any negligence claim based on these statements had to be filed on or before March 31, 2024. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Richburg, however, did not file his original complaint until April 2, 2024. Therefore, this claim is barred by the statute of limitations and Heartly House's motion to dismiss Count 1 of the amended complaint will be granted.

Richburg's proposed second amended complaint is futile as to Counts 1 and 3 as it does not state any additional facts to establish that the House of Ruth Defendants or Heartly House owed him any duty or breached any duty. To the extent that any duty has been established as to these defendants, such alleged breaches are alleged to have occurred prior to April 2, 2021, the relevant limitations period. Accordingly, Plaintiff's motion for leave to file the second amended complaint as to Counts 1 and 3 is denied.

## B. Section 1983 Claim (Count 2)

### 1. The House of Ruth Defendants and Heartly House

Under 42 U.S.C. § 1983, plaintiffs may only sue state officials or private parties that act with such a "close nexus" to the state that they "may fairly be said to be a state actor." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)) (internal citations omitted). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. . . . It is enough that [the private person] is a willful participant in joint activity with the State or its agents." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)

---

[3] According to Heartly House and the House of Ruth Defendants, Richburg's proposed second amended complaint misspells Mr. Hoffmann's name as "Hoffman." *See* ECF No. 64 at 5 n.6; ECF No. 82-1 at 2–3.

(quoting *United States v. Price*, 383 U.S. 787, 794 (1966)) (internal quotations omitted). "[P]rivate lawyers do not act under color of state law merely by making use of the state's court system." *Roginsky v. Blake*, 131 F. Supp. 2d 715, 719 (D. Md. 2000) (quoting *Fleming v. Asbill*, 42 F.3d 886, 890 (4th Cir. 1994)) (internal quotations omitted). Section 1983 claims are subject to a state's personal injury statute of limitations. *Cooper v. City of Wheeling*, --F.4th--, 2026 WL 585778, *2 (4th Cir. Mar. 5, 2026) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)).

The House of Ruth Defendants and Heartly House argue that the amended complaint offers no facts to show that they were acting under the color of state law or as a state actor in order for a Section 1983 claim to be asserted against them. ECF No. 63-1 at 11. Plaintiff argues that the "Amended Complaint explicitly alleges that the House of Ruth Defendants conspired with the police defendants, who are state actors, to violate the Plaintiff's civil rights" and specifically that "they worked together to fabricate false charges and interfere with a court-ordered evaluation." ECF No. 75 at 5.

Richburg's conclusory allegations regarding the House of Ruth Defendants and Heartly House working with the Anne Arundel police are insufficient to establish that they were acting under the color of law for a Section 1983 claim to survive. The amended complaint does not include any factual allegations to show any coordination between the House of Ruth Defendants, Heartly House, and the state. Further, the only role that the amended complaint alleges that the House of Ruth Defendants played in the various incidents was that they provided Defendant Kifle with legal representation, which is insufficient to establish them as a state actor. Therefore, the House of Ruth Defendants' and Heartly House's motions to dismiss Count 2 of the amended complaint will be granted.

The House of Ruth Defendants and Heartly House argue that the motion for leave to file a second amended complaint fails for the same reasons because no new facts were alleged to support any conclusion that they were acting under color of state law. ECF No. 64 at 4. Plaintiff argues that the Section 1983 claim against the House of Ruth Defendants and Heartly House is meritorious because the proposed second amended complaint alleges a long-standing conspiratorial relationship as evidence of the "joint action" theory of liability under Section 1983. ECF No. 65 at 7 (citing *Adickes*, 398 U.S. 144). He contends that the proposed second amended complaint alleges House of Ruth of Maryland's involvement with Kifle beginning in January 2021 when they urged her to leave Richburg and that the Officer Defendants became "personal friends" with Kifle, "with whom House of Ruth Defendants were actively working, and that the police officers even sat at the defense table in court on Kifle's behalf." *Id*.

The proposed second amended complaint is futile as it fails for the same reason as the amended complaint.[4] The proposed second amended complaint alleges only independent actions taken by the House of Ruth Defendants unrelated to actions taken by the Officer Defendants, including actions taken by the House of Ruth Defendants in their legal representation of Kifle. *See* ECF No. 57-1 ¶¶ 13, 35, 39–42, 49, 51. Other than a conclusory allegation that "[f]rom August 2022 to April 2025, [House of] Ruth [of

---

[4] The Court notes that, although the header of Count 2 in the proposed second amended complaint states that Count 2 is alleged only against the Officer Defendants, *see* ECF No. 57-1 at 12, the paragraphs therein refer to Defendants broadly, *see id*. ¶¶ 66, 70, 80. Further, Plaintiff's reply brief argues that Count 2 is meritorious as to the House of Ruth Defendants. *See* ECF No. 65 at 7. Therefore, although the second amended complaint appears on its face to exclude defendants other than the Officer Defendants, given that the outcome is the same, the Court will analyze the Count 2 claim as to the House of Ruth Defendants and Heartly House.

Maryland] represented, advised, conspired with, encouraged, and provided legal support to Kifle as Kifle, Spieth, Eslick, [House of] Ruth [of Maryland], Edwards, and Hausner presented knowingly false accusations," *id*. ¶ 57, and a statement that Sgt. Speith sat at the defense table in court for Kifle, *id*. ¶ 38, the proposed second amended complaint lacks any facts to allege any joint activity between the House of Ruth Defendants and the state.

Similarly for Heartly House, the proposed second amended complaint broadly alleges that Mr. Hoffmann and the Officer Defendants prompted Defendant Kifle's false allegations but does not allege that they did so jointly rather than independently. *See id*. ¶¶ 23, 25, 28. Other than a conclusory allegation that "Eslick, Hoffman, and Spieth allegedly conspired with Kifle, knowing the allegations were false and intended to help Kifle regain custody," *id*. ¶ 24, the proposed second amended complaint lacks any facts to allege any joint activity between Heartly House and the state. And to the extent any joint activity is alleged between Mr. Hoffmann and the Officer Defendants, the actions are alleged to have occurred on or before March 31, 2021. *Id*. ¶¶ 23, 25. Because that is beyond the limitations period, any joint activity theory for a Section 1983 claim against Heartly House is barred by the statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Accordingly, Plaintiff's motion for leave to file a second amended complaint as to Count 2 against the House of Ruth Defendants and Heartly House will be denied.

### 2.    The Officer Defendants

The Officer Defendants argue that the proposed second amended complaint is futile as it still does not overcome qualified immunity. ECF No. 61 at 2. They point to the Court's prior decision holding that the Officer Defendants were entitled to qualified

immunity as there were no facts to show any racial or gender animus and the claims regarding Richburg's criminal charges failed because he was arrested pursuant to a warrant and argue that nothing in the newly added facts addresses either of these deficiencies. *Id.* (citing *Richburg,* 2025 WL 1697465, at *2; ECF No. 3 ¶ 99). The Officer Defendants further argue that Richburg's false arrest and malicious prosecution claims fail because Richburg was arrested pursuant to a facially valid warrant and the proposed second amended complaint includes no facts to allege that the warrant was premised upon a lack of probable cause. *Id.* at 2–3. They argue that "[n]one of the new facts alleged in the proposed amended complaint demonstrate that Sgt. Spieth or Cpl. Elsick 'deliberately or with a reckless disregard for the truth made material false statements in [the] affidavit' supporting the warrant application, or that they 'omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Id.* at 3 (quoting *Jackson v. Carin*, 646 F. Supp. 3d 656, 666 (D. Md. 2022)). They contend that the proposed second amended complaint does not identify *who* swore out the supposedly misleading arrest warrant or *which* allegedly false statements were made with reckless disregard for the truth. *Id.* Finally, they argue that to the extent qualified immunity does not apply, the new facts in the proposed second amended complaint relate to police work that occurred between February 2021 and April 2021, and thus would be barred by the three-year statute of limitations based on when the original complaint was filed, and that the claims related to police work alleged to have occurred "approximately a week later" than July 28, 2022 would be barred by the statute of limitation based on when the motion for leave to file a second amended complaint was filed—August 1, 2025. *Id.* at 3–4 (quoting ECF No. 57-1 ¶¶ 36–37).

18

Richburg argues that the proposed second amended complaint does have sufficient facts to demonstrate credible violations of his Fourth and Fourteenth Amendment rights and overcome qualified immunity, such as the obstruction of a court-ordered evaluation, abuse of legal process by quashing an arrest warrant, interference in an out-of-state investigation, and conspiracy and subornation of perjury. ECF No. 62 at 5–6. He further argues that the facially valid warrant exception to a false arrest claim applies only when an officer makes a good faith error in a warrant affidavit rather than when the officer is actively fabricating evidence and therefore does not apply to this case. *Id.* at 7 (citing *Miller v. Prince George's Cnty.*, 475 F.3d 621 (4th Cir. 2007)). Finally, he argues that the statute of limitations does not bar his claims (1) because the Officer Defendants' argument ignores the facts alleged to have occurred after January 21, 2022, (2) the actions that occurred after January 21, 2022 show "the continuous nature of the alleged conspiracy which began on or about March 2021" and continued through 2024, and (3) the legal viability of the malicious prosecution claim does not accrue until the underlying criminal proceedings have been favorably terminated as this is a required factor for the claim and therefore is not time-barred. *Id.* at 12–14.

The proposed second amended complaint fails to allege *who* specifically made allegedly false allegations in a warrant affidavit and whether that specific officer did so with "serious doubts as to the truth of his statements or [] obvious reason to doubt the accuracy of the information he reported" in order to constitute reckless disregard. *Jackson*, 646 F. Supp. 3d. at 666 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)) (internal quotations omitted). In any event, any claims based on actions that occurred prior to April 2, 2021, such as any alleged obstruction of Kifle's court-order mental health evaluation, *see* ECF No. 57-1 ¶ 22, the issuance of the statement of

charges, *id.* ¶ 23, or quashing of Kifle's warrant, *id.* ¶ 31, are time-barred.[5] As for Richburg's claim of malicious prosecution as a basis to overcome qualified immunity, the proposed second amended complaint lacks sufficient facts from which the Court can find this claim to have been timely filed as he does not state when any acquittal occurred. *Id.* ¶ 32. Finally, Richburg has failed to sufficiently allege how his allegations that Sgt. Spieth contacted Ohio authorities in the summer of 2022 or invited Defendant Kifle to her family farm after the institution of this case constitute independent constitutional claims in order to overcome qualified immunity. *Id.* ¶¶ 37, 46. Therefore, the proposed second amended complaint is futile and thus Plaintiff's motion for leave to file a second amended complaint as to Count 2 against the Officer Defendants will be denied.

### C.    Intentional Infliction of Emotional Distress (Count 4)

For a claim of IIED to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must sufficiently plead all four elements of the tort: (1) the defendant's conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Batson v. Shiflett*, 325 Md. 684, 733 (1992) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). Factor 2 requires conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

---

[5] Richburg incorrectly states that the statutory period starts on January 21, 2022 as he claims that his "original complaint was filed on January 21, 2025." ECF No. 62 at 12. Plaintiff, however, confuses the date that he filed his complaint, which was April 2, 2024, and the date in which the case was removed to this Court. ECF Nos. 1 & 2.

atrocious, and utterly intolerable in a civilized community." *Id*. (quoting *Harris*, 281 Md. at 567) (internal quotations omitted).

The House of Ruth Defendants and Heartly House argue that the amended complaint fails to allege any actions by them that rise to the level of outrageousness required for an IIED claim. ECF No. 63-1 at 14. They further argue the amended complaint also fails to describe how any conduct by them contributed to any emotional distress. *Id*. Plaintiff does not directly contest the arguments for dismissal of the IIED claim and only says under his argument for his HIPAA claim that "the factual allegation that the House of Ruth Defendants 'illegally and improperly shared a copy of a confidential, sealed, evaluation' in violation of HIPAA is a valid factual allegation that can be used to support other tort claims, such as civil conspiracy or intentional infliction of emotional distress." ECF No. 75 at 6.

The amended complaint fails to allege facts to assert that the House of Ruth Defendants or Heartly House participated in any conduct that would rise to the level of outrageousness required for an IIED claim. Further, the amended complaint lacks allegations regarding the emotional distress, if any, experienced by Richburg and how they were caused by these defendants' actions. Therefore, the House of Ruth Defendants' and Heartly House's motions to dismiss Count 4 of the amended complaint will be granted.

The proposed second amended complaint is futile for the same reasons. Therefore, Plaintiff's motion for leave to file the second amended complaint as to Count 4 will be denied.

### D.    Defamation (Counts 7 and 8)

Under Maryland law, there is no distinction between libel and slander where non-media defendants are involved. *Metromedia Inc. v. Hillman*, 285 Md. 161, 168 (1979). In order to state a claim for defamation, a plaintiff must allege: "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm.*" Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017) (citing *Gohari v. Darvish*, 363 Md. 42, 54 (2001)). "To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) (citing *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.,* 172 F.3d 862 (Table), 1999 WL 89125, at *3 (4th Cir. 1999)). Without specific facts as to the contents of the alleged statements or when and how they were communicated, a defamation claim cannot stand. *See Brown v. Ferguson Enters., Inc.,* Case No. 12-cv-1817-CCB, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012).

Actions for libel or slander must be filed within one year of the date the claim accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-105. "One important judicial exception to the statute of limitations in Maryland is the 'discovery rule,' which 'tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence.'" *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 722 (D. Md. 2014) (quoting *Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 131 (2011)). "Under the discovery rule, limitations begin to run when a claimant gains knowledge sufficient to put him or her on inquiry." *Id.* (citing *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 444 (2000)).

22

The House of Ruth Defendants argue that the amended complaint fails to allege specific facts regarding any alleged defamatory statements made by them such as whether the statements were made orally or in writing, when such statements occurred, or whether such a statement appears defamatory on its face or was found to be false based on extrinsic facts. ECF No. 63-1 at 16. They assert that the paragraphs relating to the House of Ruth Defendants do not describe any alleged false or defamatory statements or any statements made at all by the House of Ruth Defendants specifically. *Id.* The House of Ruth Defendants and Heartly House argue that, to the extent any defamatory statements have been alleged, they are barred by the statute of limitations as these alleged statements occurred in 2021 or 2022, more than a year prior to the filing of this action. *Id.* at 20.

Richburg argues that the amended complaint sufficiently "alleges that the Defendants made 'a false statement of fact about Plaintiff, that he committed a criminal act and/or was a domestic abuser.'" ECF No. 75 at 6. He further argues that the statute of limitations does not apply because, while some statements occurred in 2021, the amended complaint states that the House of Ruth Defendants began their involvement in the "Summer of 2022," and he broadly alleges that the House of Ruth Defendants' actions relating to the sharing of the confidential evaluation accrued within the relevant time period. *Id.* at 5.

As to the House of Ruth Defendants, the defamation claims fail because none of the three paragraphs in the factual allegations relating to the House of Ruth Defendants mentions **any** statements made by them, let alone false statements. *See* ECF No. 3 ¶¶ 110–112. Richburg's broad conclusory statement that all Defendants made false statements about him is insufficient to state a defamation claim against the House of

Ruth Defendants specifically. *See id.* ¶¶ 159, 165. Further, to the extent Richburg argues that the House of Ruth Defendants' alleged sharing of a confidential evaluation constituted defamation, he has failed to allege how this constitutes a **false** statement (as is required for a defamation claim) or when this alleged sharing took place. *See id.* ¶¶ 111–112. Finally, Richburg initiated this action on April 2, 2024 and has not alleged facts regarding when he discovered any alleged statements to account for any tolling; therefore, only statements that occurred after April 2, 2023 would be considered timely and no such statements are alleged in the amended complaint.

As to Heartly House, while Richburg does allege that Heartly House generated false allegations of rape and abuse against him, he does not allege when these actions took place in order to sufficiently plead that his action is timely. The only facts alleged for events that occurred in 2023 relate to Kifle's actions, not any of the other defendants. *See id.* ¶¶ 113–114. Therefore, the House of Ruth Defendants' and Heartly House's motions to dismiss the amended complaint as to Counts 7 and 8 will be granted.

The House of Ruth Defendants and Heartly House argue that the proposed second amended complaint is futile as it still does not allege that any statements were made by them after April 2, 2023, as required to be considered timely. ECF No. 64 at 4. They point out that one of the new facts alleged in the proposed second amended complaint "references false allegations made by Defendant Kifle that Plaintiff 'believes' were 'partly generated' by both the House of Ruth Defendants and Heartly House." *Id.* at 4 n.4 (quoting ECF No. 57-1 ¶ 35). That paragraph of the proposed second amended complaint begins with "about a year later" with the preceding paragraphs relating to an incident occurring in March 2021; therefore, the House of Ruth Defendants and Heartly

House contend that the alleged statements are alleged to have occurred in or around March 2022—well before the April 2, 2023 limitations period. *Id.*

Richburg argues that the discovery rule tolled the accrual time for the defamation claims as he "explicitly pleads that the full extent of the conspiracy, and the involvement of the defendants in fabricating false statements, was not and could not have been reasonably discovered until Kifle's reconciliation with the plaintiff beginning 'around August 2024.'" ECF No. 65 at 8.

The proposed second amended complaint lacks any facts regarding any statements made by the House of Ruth Defendants or Heartly House after April 2, 2023. Richburg has not alleged any facts to show that he was not aware of the alleged generation of false allegations until August 2024; in fact, in his original complaint, which was filed in April 2024, he included the same paragraph as in the amended complaint alleging that Heartly House generated false allegations about him. As Richburg has failed to allege facts to show that his claim is timely, his motion for leave to file a second amended complaint as to Counts 7 and 8 will be denied.

### E.    Malicious Prosecution (Count 9)

In order to establish a claim for malicious prosecution, a plaintiff must allege "(1) that a criminal proceeding was instituted or continued by the defendant against the plaintiff, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice." *Garwood v. Walmart, Inc.,* Case No. 22-cv-1029-SAG, 2023 WL 8529122, at *8 (D. Md. Dec. 8, 2023) (quoting *DiPino v. Davis*, 354 Md. 18, 54 (1999)) (internal quotations omitted). "A private party can initiate a prosecution for the purposes of

a malicious prosecution claim if it takes some affirmative act to 'institute[ ], instigate[ ] or inspire[ ] in any fashion' the state to bring criminal charges." *Id*. (quoting *Smithfield Packing Co., Inc. v. Evely*, 169 Md. App. 578, 593 (2006)).

The House of Ruth Defendants and Heartly House argue that Richburg's allegation that they "criminally charged [] and prosecuted Plaintiff without probable cause" fails because they are private entities and individuals incapable of initiating Richburg's criminal prosecution. ECF No. 63-1 at 19. They further argue that the only criminal charges that Richburg alleges were instituted against him were in 2021, over a year before any alleged involvement by the House of Ruth Defendants or Heartly House. *Id*.

Richburg agrees that a private entity or individual cannot institute a criminal prosecution but argues that his theory for malicious prosecution is based on the House of Ruth Defendants' and Heartly House's actions in influencing or urging the prosecutor to bring charges without probable cause. ECF No. 75 at 6.

Even insofar as a private entity or individual can be liable for malicious prosecution should they take some affirmative action to instigate or inspire criminal charges without probable cause, Richburg has not pled any facts in the amended complaint to establish that theory. As to the House of Ruth Defendants, the amended complaint specifically alleges that they were not involved until the summer of 2022 but that the two statements of charges against Richburg were in March 2021, making it impossible for them to have instigated or inspired those criminal charges. *See* ECF No. 3 ¶¶ 69, 81, 110. While the amended complaint lacks facts as to when Heartly House allegedly became involved, it also lacks facts to show that they took any affirmative actions to "institute[ ], instigate[ ] or inspire[ ]" the state to bring criminal charges.

26

*Smithfield Packing Co.*, 169 Md. App. at 593; *see* ECF No. 3 ¶ 104. Therefore, the House of Ruth Defendants' and Heartly House's motion to dismiss the amended complaint as to Count 9 will be granted.

In the proposed second amended complaint, Richburg added a new fact that Defendants Hausner and House of Ruth of Maryland allegedly visited Kifle in the hospital on January 26, 2021 and "urg[ed] her to leave with them because Richburg had previously sued them, which Kifle refused." ECF No. 57-1 ¶ 13. This is the only new fact placing the House of Ruth Defendants into the series of incidents prior to the March 2021 criminal charges, and the House of Ruth Defendants argue that "Plaintiff appears to have included this detail in an effort to shore up his claims that involve the various Defendants working together against him, such as his claims of malicious prosecution and defamation." ECF No. 64 at 11. Plaintiff does not dispute this or make any new arguments for why the proposed second amended complaint is not futile as to the malicious prosecution claim on this basis.

Richburg's claim that the House of Ruth Defendants encouraged Kifle to leave Richburg in January 2021 without more appears disconnected from the state's decision to institute criminal charges against him in March 2021 and Richburg has not alleged any facts to connect the two. All other actions alleged to have been done by the House of Ruth Defendants occurred after the criminal charges were instituted and, therefore, the claim would fail as to them for the same reason it does in the amended complaint. Therefore, Richburg's motion for leave to file a second amended complaint as to Count 9 against the House of Ruth Defendants will be denied.

In the proposed second amended complaint, Richburg alleges that Heartly House (through Mr. Hoffmann) created knowingly false allegations of rape and assault against

27

Richburg and encouraged Kifle to request the state to file charges for these alleged incidents, which prompted the statements of charges against him. ECF No. 57-1 ¶¶ 23–25. Richburg alleges that he was acquitted on the criminal charges based on the March 17, 2021 incident. *Id*. ¶ 32. But Richburg does not allege when the acquittal occurred in order to establish the timeliness of his claim, and he does not allege facts regarding the outcome of the criminal charges relating to the alleged February 2021 incident. As presently drafted, Richburg's proposed second amended complaint is futile as to Heartly House as there are insufficient facts to support Richburg's allegation that his claim is timely. Therefore, Richburg's motion for leave to file the second amended complaint as to Count 9 against Heartly House will be denied.

### F.    Violation of HIPAA (Count 10)

HIPAA provides that "[a] person who knowingly . . . obtains . . . or[] discloses individually identifiable health information to another person" without authorization will be fined, imprisoned, or both. 42 U.S.C. § 1320d-6. But there is not a private right of action under HIPAA. *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021). Instead, "[a] person who believes a covered entity or business associate is not complying with the administrative simplification provisions may file a complaint with the Secretary" of the Department of Health and Human Services within 180 days of the act occurring. 45 C.F.R. § 160.306(a), (b)(3).

Richburg concedes that there is no private right of action under HIPAA and instead requests that the facts regarding the alleged improper sharing of the confidential evaluation be used to support his other tort claims. ECF No. 75 at 6; ECF No. 65 at 9.

As there is no private right of action under HIPAA, Plaintiff's claim for violation of HIPAA must be dismissed and thus is also futile in the proposed second amended

complaint. Therefore, the House of Ruth Defendants' and Heartly House's motions to dismiss the amended complaint as to Count 10 will be granted and Plaintiff's motion for leave to file a second amended complaint as to Count 10 will be denied.

### G.    Computer Fraud and Abuse Act & Md. Rule 9-205.3 (Proposed Count 11)

A person violates the CFAA by "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer," or "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(C). Under Maryland law, it is also illegal for a party to disseminate a written report of assessment or transcript of an oral report of a custody evaluation report other than to individuals intended to be called as experts by the party. Md. Rule 9-205.3(i)(1), (j). This only applies should the court order appointing or approving an assessor "include . . . any restrictions upon the copying and distribution of reports, whether pursuant to this Rule, agreement of the parties, or entry of a separate protective order." *Id*. 9-205.3(g)(6), (j). Should someone violate the Maryland Rule, the harmed party can seek contempt in the court that issued the order. *Id*. 9-205.3(j) (cross-referencing the Maryland Rules governing contempt proceedings in Title 15, Chapter 200 of the Maryland Rules).

The House of Ruth Defendants and Heartly House argue that the claim in the proposed second amended complaint is futile because there are no facts alleging that anyone intentionally accessed a protected computer without authorization and there are insufficient facts regarding whether the allegedly improperly obtained evaluation constitutes a custody evaluation under the Maryland Rule. ECF No. 64 at 5–6. They

further note that Richburg does not allege that there was any court order preventing the dissemination of any alleged custody evaluation and, even if Richburg believed that the House of Ruth Defendants and Heartly House violated the Maryland Rule, the proper remedy would be for Richburg to seek contempt in the court that issued the order, not a claim here. *Id.* at 7.

Richburg acknowledges that "[t]he CFAA prohibits accessing a protected computer 'without authorization or exceed[ing] authorized access.'" ECF No. 65 at 10 (emphasis removed). He further acknowledges that courts apply a narrow interpretation, limited "to situations where an individual accesses a computer or information on a computer without permission." *Id.* (quoting *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 203 (4th Cir. 2012)). He argues, however, that the fact the prior courts found the document to be "illegally obtained" provides compelling support that the access was "without authorization." *Id.* Plaintiff does not respond to the argument regarding the Maryland Rule.

As for the federal CFAA claim, Richburg concedes that CFAA applies only "where an individual accesses a computer or information on a computer" and yet the proposed second amended complaint provides no facts regarding any alleged access of a protected computer. *See id.* In fact, the proposed second amended complaint alleges that the House of Ruth Defendants received the document from Mr. Hoffmann of Heartly House, not from accessing a computer, and there are no allegations that Mr. Hoffmann accessed a computer without authorization to obtain the document. ECF No. 57-1 ¶ 39. Further, Richburg has not identified a right to sue under the Maryland Rule rather than seeking contempt in the court that ordered the evaluation. In fact, he alleges that both Howard County Circuit Court and Anne Arundel County Circuit Court held the House of

Ruth Defendants and Heartly House in contempt for this document, but he has provided no authority upon which he can file a subsequent case upon the same alleged action. *Id.* ¶ 41. Therefore, Plaintiff's motion for leave to file a second amended complaint as to Count 11 will be denied.

### H.    Civil Conspiracy (Count 6)

"[A] plaintiff cannot prevail on a claim for civil conspiracy under Maryland law 'in the absence of other tortious injury to the plaintiff.'" *Brown v. Bd. of Educ. of Prince George's Cnty., Md.*, Case No. 20-cv-2632-DLB, 2022 WL 888424, at *6 (D. Md. Mar. 25, 2022) (quoting *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014). Given that all tort claims against the House of Ruth Defendants and Heartly House will be dismissed and a civil conspiracy claim cannot stand alone, the House of Ruth Defendants' and Heartly House's motions to dismiss the amended complaint as to Count 6 will be granted and Plaintiff's motion for leave to file a second amended complaint as to Count 6 will be denied.

### I.    Dismissals

"The determination [of] whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009) (citing *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985)). The policy of the Federal Rules of Civil Procedure generally favors allowing the amending of pleadings particularly where minimal time had been spent or expense incurred as a result of the inadequate pleading and in the absence of bad faith. *Id.* at 639 (citing Fed. R. Civ. P. 15(a)).

Given that the Court had previously granted the Officer Defendants' motion to dismiss the amended complaint based on qualified immunity without prejudice, ECF

No. 50, and Richburg's proposed second amended complaint is futile for the same reason, the dismissal of the Officer Defendants shall be **with** prejudice.

Given that this is the first dismissal of claims against the House of Ruth Defendants and Heartly House, the dismissal shall be without prejudice.

### J.      Motion for Default Judgment as to Defendant Kifle

#### 1.      Legal standard

"When a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If a complaint does not specify a "sum certain" amount of damages, the court may enter a default judgment against the defendant. Fed. R. Civ. P. 55(b)(1)–(2). In considering such motion, "the court accepts as true the well-pleaded allegations in the complaint but must determine whether those allegations 'support the relief sought in this action.'" *Parrish v. Leithman*, 733 F. Supp. 3d 371, 373 (D. Md. 2024) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (quoting *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)) (internal quotations omitted).

If default judgment is warranted, the Court must then "make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Parrish*, 733 F. Supp. 3d. at 373–74 (quoting *Int'l Painters*, 919 F. Supp. 2d at 684). The movant "bears the burden of establishing entitlement to recovery." *Id*. at

374 (citing *United States v. Nazarian*, Case No. 10-cv-2962, 2012 WL 2045944, at \*3 (D. Md. June 5, 2012)).

### 2.    Liability

Richburg has filed a motion for default judgment as to Defendant Kifle under the amended complaint. ECF No. 41.[6] Based on the facts in the amended complaint, Richburg has not alleged an entitlement to default judgment as to the claims for violation of 43 U.S.C. § 1983 (Count 2), defamation (Counts 7 & 8), and HIPAA (Count 10) for the same reasons stated as to the other defendants. *See* §§ III.B.1, III.D, III.F, *infra.* Richburg also has not shown an entitlement to default judgment as to the negligent hiring, retention, and supervision claim (Count 3) as he does not allege that Defendant Kifle was anyone's employer or that any employee of hers breached any alleged duty. Finally, Richburg has not alleged facts to show an entitlement to default judgment as to the civil conspiracy claim (Count 6) against Kifle as he has failed to allege that she had an agreement or understanding with another person or that any tortious act was done in furtherance of the alleged conspiracy. *See Tessemae's, LLC v. McDevitt*, Case No. 20-cv-2013-GLR, 2021 WL 1216669, at \*10 (D. Md. Mar. 31, 2021) (citing *Van Royen v. Lacey*, 262 Md. 94, 97–98 (1971)). That leaves Counts 1 (negligence), 5 (assault) and 9 (malicious prosecution).

As to the assault claim (Count 5), the statute of limitations is one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105; *see Carey v. Wolford*, Case No. 22-cv-0782-RDB, 2023

---

[6] Given that Richburg's motion is for default judgment based on the amended complaint and his motion for leave to file the second amended complaint will be denied as futile, the Court will only consider the facts alleged in the amended complaint and the motion for default judgment.

WL 3276217, at * 1 n.2 (D. Md. May 5, 2023) (dismissing assault claim as time-barred after one year); *Hines v. French*, 157 Md. App. 536, 550 (2004) (affirming the dismissal of an assault claim as time-barred after one year). Given that Richburg's original complaint was filed on April 2, 2024, only assault claims based on actions that occurred after April 2, 2023 are within the statutory period. Richburg does not specify upon what incident he bases his assault claim against Kifle; however, all instances that could arguably constitute assault by Defendant Kifle alleged in the amended complaint occurred in 2021 or 2022. ECF No. 3 ¶¶ 41, 56, 92, 106. Therefore, Richburg is not entitled to default judgment as to the assault claim (Count 5).

As to the negligence claim (Count 1), the statute of limitations is three years. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Therefore, only alleged breaches that occurred after April 2, 2021 are timely. Richburg has sufficiently pled facts to constitute a claim based on Defendant Kifle allegedly "bec[oming] dangerously abusive to Richburg while he was operating the vehicle" that Richburg, Kifle, and their daughter were in, on July 28, 2022. ECF No. 57-1 ¶ 106. Any other basis for negligence against Kifle is time-barred. With the factual allegations accepted as true, Richburg has established that Kifle was negligent.

As to the malicious prosecution claim (Count 9), the amended complaint alleges that Defendant Kifle made false rape and abuse allegations against Richburg that led to statements of charges being issued against him and that she admitted in 2023 that these statements were false. ECF No. 57-1 ¶¶ 69–71, 77–78, 83, 89, 103, 113–115. Accepting these allegations as true, as the Court must given Kifle's failure to defend against Richburg's claims, Richburg has sufficiently alleged a claim for malicious prosecution against Defendant Kifle.

34

### 3. Damages

"[C]ompensatory damages are intended to make the plaintiff whole"; "they are not intended to grant to the plaintiff a windfall as a result of the defendant's tortious conduct." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 414 (2013) (citing cases). "Thus, an award for compensatory damages must be anchored to a rational basis on which to ensure that the awards are not merely speculative." *Id.* (citing *McAlister v. Carl*, 233 Md. 446, 455 (1964)). Where the alleged harm is emotional distress, although a court should "recogniz[e] that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, [courts] have required a plaintiff to 'reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements.'" *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 503 (4th Cir. 2007) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996)). "Negligence, however gross, is not enough to support a request for punitive damages." *Hanson v. Hanson*, Case No. 19-cv-2214-GLR, 2020 WL 4734313, at *3 (D. Md. Aug. 14, 2020) (citation omitted); *see Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*, 554 F. App'x 176, 189 (4th Cir. 2014) (citation omitted) (noting that punitive damages are generally only awarded when the plaintiff has shown that a tort was done willfully, wantonly, or recklessly). "[F]or punitive damages to be allowable in malicious prosecution actions, a plaintiff must establish by clear and convincing evidence the defendant's wrongful or improper motive for instigating the prosecution." *Montgomery Ward v. Wilson*, 339 Md. 701, 735 (1995). Attorneys' fees are calculated using the lodestar method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

35

Richburg submitted an affidavit from himself with his motion for default judgment stating that the extent of his damages caused by Defendant Kifle amounts to $25 million per claim in compensatory damages, and he further requests $100 million in punitive damages and costs in the amount of $340,052 plus attorneys' fees and interest. ECF No. 41-6 at 1–2.

Richburg's claim for $25 million in compensatory damages for each claim is frivolous. Richburg provides no medical evidence or explanation of specific economic harm, emotional distress, or other harm to indicate how he is entitled to any of these amounts. He also has provided no basis for an entitlement to punitive damages for negligence and malicious prosecution. Further, his attorney has not provided any documentation to support the alleged $340,052 in costs or any documentation from which the Court can calculate attorneys' fees under the lodestar method.

Plaintiff does not allege any basis for Kifle's negligence causing him any economic damages or that he had to receive any medical treatment as a result of the July 28, 2022 incident. Therefore, without evidence to the contrary (which was Plaintiff's burden to provide), any physical injury shall be deemed to have been minimal. As such, the Court will award Richburg $100 in compensatory damages from Kifle for his negligence claim. Richburg's request for punitive damages for the negligence claim will be denied.

The amended complaint and motion for default judgment fail to allege specific economic or non-economic damages as a result of the malicious prosecution claim against Kifle. The amended complaint broadly states that "[a]s a result of the knowingly false accusations of the Defendant Kifle, . . . Plaintiff has suffered damages including loss of contracts with insurance companies for whom he contracted and which were worth millions of dollars in business. Plaintiff's entire business fell apart." ECF No. 3 ¶

115. But he does not provide any information on his business, how much the business made before and after the alleged malicious prosecution, or how any alleged loss of contracts was caused by Kifle's actions. Further, he does not allege that Kifle acted with actual malice as to be entitled to punitive damages. Therefore, the Court will award Richburg $0 in compensatory damages for his malicious prosecution claim and his request for punitive damages will be denied.

## IV.    CONCLUSION

For these reasons, the House of Ruth Defendants' motion to dismiss the amended complaint (ECF No. 63) will be granted, Defendant Heartly House's motion to dismiss the amended complaint (ECF No. 81) will be granted, Richburg's motion for leave to file a second amended complaint (ECF No. 57) will be denied, and Richburg's motion for default judgment as to Defendant Kifle (ECF No. 41) will be granted in part and denied in part. A separate order follows.


Date:  March 27, 2026                    _____/s/_____
                                         Adam B. Abelson
                                         United States District Judge